FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EXXON MOBIL CORPORATION, Individually and on behalf of AL-JUBAIL PETROCHEMICAL COMPANY, :<br><br>Plaintiff, :<br><br>v. :<br><br>SAUDI BASIC INDUSTRIES CORPORATION, :<br><br>Defendant. : | **OPINION**<br><br>Civil Action No. 04-4900 (WHW) |

WALLS, District Judge.

Saudi Basic Industries Corporation ("SABIC") moves to compel Exxon Mobil Corporation ("ExxonMobil") to arbitrate this dispute and seeks a stay of litigation in this Court until such arbitration is complete. As a corollary, SABIC appeals the entry of a pretrial scheduling order by the Magistrate Judge assigned to the case. For the reasons set forth below, the motion to compel arbitration and stay the litigation is denied and the Magistrate Judge's pretrial scheduling order is modified.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff ExxonMobil filed a complaint, individually and on behalf of Al-Jubail Petrochemical Co. ("KEMYA"), against defendant SABIC on October 7, 2004. KEMYA is a 50/50 joint venture between SABIC and Exxon Chemical Arabia, Inc. ("ECAI"), an indirect subsidiary of ExxonMobil. ExxonMobil's complaint alleges: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) fraud in the inducement; (4) negligent

FOR PUBLICATION

misrepresentation; (5) unjust enrichment; and (6) promissory estoppel, each in conjunction with SABIC's alleged violations of the March 10, 2000 stipulation agreement made between SABIC and ExxonMobil before this Court (the "Stipulation"). The Stipulation provides that ExxonMobil drop the fourth count of its amended counterclaim against SABIC in Civil Action No. 98-4897 (the "NJ-I" action) and that SABIC and its affiliates (other than KEMYA) refrain from using certain technologies (the "SCM-T Information") until ownership rights in the technologies are established. The fourth count of the amended counterclaim alleged that SABIC had breached its fiduciary duties to KEMYA by assisting other SABIC affiliates in their use of SCM-T Information.[1]

Although nearly identical, there are two arbitration provisions at issue in this case. The first provision is found in the 1980 Joint Venture Agreement ("JVA") between SABIC and ECAI; the second in the 1980 Service Agreement ("SA") between KEMYA and Exxon Chemical Company ("ECC"), an unincorporated subsidiary of ExxonMobil. The JVA reads in pertinent part:

> Article 17
> Settlement of Dispute:
> 17.1 Subject to Article 16 of this Joint Venture Agreement if at any time any question, dispute, difference or controversy shall arise between the Partners relating to the design, construction, start-up, maintenance and subsequent operation of the Petrochemical Plant (including the provision of technical information and services) or as a result of or in connection with the provisions of this Joint Venture Agreement and the applicable annexes either Partner within (60) days following a notice to the other partners of the existence of a dispute may request that such matter be made the

---

[1] NJ-I is still before this Court on ExxonMobil's motion to dismiss, awaiting a certiorari decision by the United States Supreme Court on related Delaware litigation. For a more detailed factual and procedural history, see this Court's opinion in Saudi Basic Industries Corp. v. ExxonMobil Corp., 194 F. Supp. 2d 378 (D.N.J. 2002).

subject of a non-binding recommendation by 3 arbitrators appointed in accordance with the Rules of Conciliation and Arbitration of the Kingdom. The arbitration shall take place in Saudi Arabia and shall be conducted in English and Arabic and provision shall be made for simultaneous translation.

17.2 Each Partner undertakes to refrain from instituting any proceedings under Article 12.1 until the forgoing procedure has been completed and a further 90 days have elapsed thereafter, without prejudice to all other remaining rights of the partners under the provisions of this Joint Venture Agreement.[2]

## DISCUSSION

SABIC's principal argument is that the arbitration provisions in question are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. If SABIC is correct and the provisions are otherwise enforceable, this Court is without discretion in the matter and must compel arbitration and stay the litigation. 9 U.S.C. §§ 3-4. ExxonMobil counters that the provisions are non-binding and not subject to the FAA. ExxonMobil also argues that the provisions are unenforceable for a variety of reasons, including absence of agreement, waiver, and estoppel. The Court need not decide whether the arbitration agreements are otherwise enforceable because it now holds that the non-binding arbitration provisions in this case fall outside the scope of the FAA.

### I. Applicability of the FAA

Federal law is unsettled with regard to the application of the FAA to non-binding arbitration provisions. See, e.g., Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1207-09 (9th Cir. 1998) (applying the FAA to a mandatory, non-binding arbitration provision). But cf.

---

[2]Article 12.1 sets out the criteria for default and termination of the JVA. Article 16 provides that the laws and regulations of the Kingdom of Saudi Arabia govern the agreement. The term "Partners" is defined in the JVA as SABIC and ECAI. The provisions of the SA are materially the same, although the "Parties" to the SA are defined as KEMYA and ECC.

**FOR PUBLICATION**

Bombardier Corp. v. National R.R. Passenger Corp., 333 F.3d 250, 251-52 (D.C. Cir. 2003) (discussing district court's refusal to compel alternative dispute resolution in a case with $200 million in claims where the panel was only able to issue binding awards up to $5 million). The Third Circuit has twice considered the issue, generally adopting the approach outlined by Judge Jack Weinstein in AMF, Inc. v. Brunswick Corp., 621 F. Supp. 456 (E.D.N.Y. 1985). There, the Judge noted that "[a]rbitration is a term that eludes easy definition," "[t]he Federal Arbitration Act . . . made agreements to arbitrate enforceable without defining what they were," and "[a]t no time have the courts insisted on a rigid or formalistic approach to the definition of arbitration." Id. at 459-60. Judge Weinstein believed that "[t]he issue posed is whether 'a controversy' would be 'settled' by the process set forth in the agreement," "*viewed in the light of reasonable commercial expectations.*" Id. at 459, 461 (emphasis added).

In the first Third Circuit case adopting this approach, Harrison v. Nissan Motor Corp., 111 F.3d 343, 349 (3d Cir. 1997), the court held that non-binding arbitration under the Pennsylvania Lemon Law did not fall under the FAA because a claimant could pursue litigation after forty days if the arbitrator had not reached a final decision. The definition of "arbitration" was narrowed:

> the essence of arbitration . . . is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator. Arbitration does not occur until the process is completed and the arbitrator makes a decision. Hence, if one party seeks an order compelling arbitration and it is so granted, the parties must then arbitrate their dispute to an arbitrator's decision, and cannot seek recourse to the courts before that time.

Id. at 350.

In the second decision, Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003), the circuit held that the FAA did not apply to a contractual regime providing for non-binding arbitration,

**FOR PUBLICATION**

when not preventing a party from filing suit before, during or after the arbitration proceedings. This case also adopted the Weinstein "reasonable commercial expectations" standard as well as the <u>Harrison</u> court's narrowed "arbitration" definition.

Here, a plain reading of the arbitration provisions indicates that they are non-binding. While the language of the FAA is not limited to final and binding arbitration, the text does indicate that it is only applicable to contractual agreements "to settle" disputes by arbitration. 9 U.S.C. § 2. Under the "reasonable commercial expectations" standard adopted by the Third Circuit, it seems highly unlikely to this Court that non-binding arbitration in this case will settle the dispute. The history of contentious litigation between the parties over the last seven years, an experience shared by this Court for most of that time, indicates that settlement of this matter is not reasonably to be expected from a non-binding proceeding. In the course of motion and other practice before this Court, the parties have always been confrontational: no quarter given. Any supposed movement to resolution of this matter at best would be glacial. Although this Court is mindful that federal policy favors arbitration and many contentious disputes are settled through alternative dispute resolution mechanisms, every reasonable indication is that this matter will return to the Court regardless of what an arbitration panel recommends. ExxonMobil said as much in its briefs and at oral argument. Because of the parties' long business relationship in other matters, the Court has from time to time suggested, advised, solicited, even cajoled them to resolve their present difference. They are deaf. Only someone who believes in a "snowball's chance" would think that this matter will now be settled by any non-binding proceeding.

**FOR PUBLICATION**

Additionally, while the arbitration provisions are mandatory before termination of the JVA, no contractual language makes arbitration a condition precedent to litigation. Had the parties intended to preclude contemporaneous litigation pending a final recommendation by the arbitrators, they could easily have done so. See, e.g., Bombardier Corp. v. National R.R. Passenger Corp., 298 F. Supp. 2d 1, 3 (D.D.C. 2002) (holding that dispute resolution is not a condition precedent to litigation absent explicit intent to the contrary). "[A]ccording to the Third Circuit's analysis, the parties must not only agree to submit the dispute to a third party, but also agree not to pursue litigation 'until the process is completed.'" Wolsey, 144 F.3d at 1208 (quoting Harrison, 111 F.3d at 350). Because there is no demonstrated intent to refrain from parallel litigation, the Court is further convinced that the non-binding provisions do not qualify as "arbitration" within the Third Circuit's interpretation of the FAA.

## II. The Magistrate Judge's Pretrial Scheduling Order

### A. The Magistrate Judge's Authority

SABIC contends that the Magistrate Judge was without authority to enter a pretrial scheduling order while the motion to compel arbitration was pending. SABIC rests its argument on Local Civil Rule 72.1(a)(3)(C), but its reading of that rule is incorrect. In relevant part, the rule reads:

> (C) As part of the Magistrate Judge's general supervision of the civil calendar, the Magistrate Judge shall conduct scheduling conferences and enter scheduling orders in accordance with Fed. R. Civ. P. 16 in all civil cases except the following:
>
> . . . (vi) proceedings to compel arbitration . . .

**FOR PUBLICATION**

Accepting that this case is a "proceeding to compel arbitration," nothing in the local rule prohibits the Magistrate Judge from entering a scheduling order in such. While the Magistrate Judge "shall" issue scheduling orders in all civil cases not exempted under the local rule, an appropriate reading of the rule allows for discretion on the exempted matters. This reading is supported by cross-references within the local rules as well as the comments to the annotated edition of the rules. L.Civ.R. 16.1(a)(5), for example, provides that "[c]onferences shall not be conducted in those civil cases described in L.Civ.R. 72.1(a)(3)(C) *unless the Magistrate Judge so directs.*" (emphasis added). L.Civ.R. 26.1(b)(1) states that conferences are not normally held in those cases described in L.Civ.R. 72.1(a)(3)(C) "unless the judicial officer otherwise directs." Although certainly not binding, a comment to the annotated rules is also informative: "L.Civ.R. 72.1(a)(3)(C) is the local rule promulgated pursuant to the authority in Fed. R. Civ. P. 16(b) to dispense with the need for scheduling orders, and lists 10 categories of cases where such orders *are not required.*" Allyn Z. Lite, N.J. Federal Practice Rules, Comment 5 to L.Civ.R. 72.1(a) (Gann 2005) (emphasis added).

As scheduling conferences and scheduling orders are treated the same by L.Civ.R. 72.1(a)(3)(C), SABIC's reading would prevent the Magistrate Judge from even holding scheduling conferences on the exempted matters; a view plainly in conflict with the rules. Given that the purpose of a scheduling conference is to aid in the production of a scheduling order, SABIC's reading of the rule must be rejected. The Magistrate Judge has the authority to issue a scheduling order in a proceeding to compel arbitration.

FOR PUBLICATION

### B. Modification of the Scheduling Order

The more difficult issue presented by SABIC is its request to vacate the Magistrate Judge's decision to hold all depositions in the United States. Under Fed. R. Civ. P. 72(a), non-dispositive matters decided by a Magistrate Judge are reviewed under a "clearly erroneous or contrary to law" standard. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." Lo Bosco v. Kure Engineering Ltd., 891 F. Supp. 1035, 1037 (D.N.J. 1995) (quoting U.S. v. Gypsum Co., 333 U.S. 364, 395 (1948)). Without clear error, the Court will not overturn the Magistrate "'even if the court might have decided the matter differently.'" Cardona v. General Motors Corp., 942 F. Supp. 968, 971 (D.N.J. 1996) (quoting Toth v. Alice Pearly, Inc., 158 F.R.D. 47, 50 (D.N.J. 1994)).

Although "the magistrate . . . has great discretion in designating the location of the taking of a deposition," South Seas Catamaran, Inc. v. Motor Vessel "Leeway", 120 F.R.D. 17, 21 (D.N.J. 1988), there is a general presumption that the "deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2112 (2d ed. 1994). "This is subject to modification, however, when justice requires." Id. Additionally, "[n]otwithstanding the generally recognized rule, courts have often required corporate defendants to produce their officers at locations other than the corporation's principal place of business where there has been no showing that the defendant will suffer any resulting financial hardship." South Seas Catamaran, 120 F.R.D. at 21.

**FOR PUBLICATION**

SABIC objects to the Magistrate Judge's restriction that the taking of depositions shall be within this country. SABIC has various Saudi Arabian employees who live and work in the Kingdom of Saudi Arabia. Depositions should be conducted there, says SABIC, advancing the teaching of several cases that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business. Also, these potential deposition witnesses, according to SABIC, are hesitant, if not reluctant, to come to this country because of perceived public animus and visa restrictions affecting Saudi Arabians after the September 11, 2001 tragedy that befell the United States. On the other side, there are Jewish members of the legal team of ExxonMobil who represent that they will be unable to obtain a travel visa to Saudi Arabia because that country restricts entry of Jews and persons who have traveled to Israel.

SABIC's objection to the deposition location was expressed to the Magistrate Judge, who restricted the taking of depositions within this country without giving any reasons or explanation. It is this Court's determination that no one involved in litigation, such as deposition witnesses and particularly lawyers, should be subject to avoidable insult, indignities, or possibility of physical harm. Accordingly, the Saudi Arabian deponents will not be required to come to this country for discovery. Nor will Jewish lawyers of ExxonMobil be subject to entry refusal in Saudi Arabia and other states with similar religious restrictions. A party is entitled to the benefit of all of its counsel, whenever and wherever it wishes. Because the Magistrate Judge's direction that all depositions be conducted in this country was not accompanied by explanation and reasons, such direction was arbitrary, and perforce, clearly erroneous and contrary to law. The direction is

**FOR PUBLICATION**

modified: depositions of the Saudi Arabians shall be conducted outside the United States, in Europe; the specific country to be mutually chosen by the parties.

## CONCLUSION

The FAA does not apply to the arbitration provisions at issue in this case. The Court is under no obligation to compel arbitration or stay the litigation, and declines to do so. As the Magistrate Judge's pretrial scheduling order was issued with due authority, the Court declines to vacate it in whole. The pretrial scheduling order is modified in part so that depositions of residents of Saudi Arabia shall take place in Europe, the specific location to be chosen by the parties.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　William H. Walls, U.S.D.J.

FOR PUBLICATION

**Appearances**

Elizabeth J. Sher
PITNEY HARDIN LLP
P.O. Box 1945
Morristown, NJ 07962

James W. Quinn
David Lender
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

Andrew S. Pollis
David J. Michalski
HAHN LOESER + PARKS
3300 BP Tower
200 Public Square
Cleveland, OH 44114

Kenneth C. Johnson
EXXON MOBIL CORPORATION
CORP-EMB-15581
800 Bell Street
Houston, TX 77002
                Attorneys for Plaintiff Exxon Mobil Corporation


John E. Flaherty
Thomas J. Goodwin
McCARTER & ENGLISH, LLP
100 Mulberry Street
Newark, NJ 07102

Peter J. Boyer
McCARTER & ENGLISH, LLP
1735 Market Street, Suite 700
Philadelphia, PA 19103

FOR PUBLICATION

A. Stephen Hut, Jr.
Thomas F. Connell
Kelli C. McTaggart
WILMER CUTLER PICKERING HALE AND DORR, LLP
2445 M Street, N.W.
Washington, DC 20037
        Attorneys for Defendant Saudi Basic Industries Corporation